UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MIKIEA PRICE,
as mother and next friend of J.K.,
a minor,

       Plaintiff,

    v.                                       Case No. 19-cv-854

ROBERT MUELLER-OWENS,
MADISON METROPOLITAN SCHOOL DISTRICT,

and

ABC INSURANCE COMPANY,

       Defendants

---

## COMPLAINT

---

Mikiea Price, as mother and next friend of J.K., a minor, by her attorneys, Lawton & Cates, S.C., by Daniel S. Lenz, states the following complaint:

## **INTRODUCTION**

1.    This is a civil rights action by a minor who, while attending a Madison public school, was injured without justification by an administrator and employee.

2.    On February 13, 2019, Mueller-Owens struck, pushed, and pulled the hair of J.K., an eleven-year old African-American student at Whitehorse Middle School in Madison, Wisconsin.

3.    Mueller-Owens use of force against J.K. was a violation of her constitutional rights, as well as a violation of Madison Metropolitan School District ("MMSD") policies regarding restraint, seclusion and contact with students.

## JURISDICTION AND VENUE

4. The United States District Court for the Western District of Wisconsin has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S. Code § 1367.

6. Venue is proper pursuant to 28 U.S.C. §§130(b) and 1441(a) as this action arose in Dane County in the Western District of Wisconsin.

## PARTIES

7. Mikiea Price is the mother of a minor, J.K. Mikiea Price is an adult resident of Madison, Wisconsin. Price brings this action on behalf of J.K. pursuant to Federal Rule of Civil Procedure 17(c).

8. J.K. is now twelve years old and resides in Madison, Wisconsin. At the time of the acts and omissions described in this Complaint, J.K. was eleven years old.

9. During the 2018-2019 school year, including on February 13, 2019, J.K. attended Whitehorse Middle School in Madison, Wisconsin.

10. Robert Mueller-Owens was, at all times relevant, an adult resident of Wisconsin and an employee of the Madison Metropolitan School District, employed at Whitehorse Middle School. Mueller-Owens is being sued in his individual and official capacities.

11. As of February 13, 2019, Mueller-Owens was employed as a Positive Behavior Coach at Whitehorse Middle School.

12. Madison Metropolitan School District ("the District") is a public school district in the State of Wisconsin within this judicial district.

13.     Defendant ABC Insurance Company is the fictitious name for an unknown insurance company whose address and registered agent for service are unknown to the plaintiffs.  On information and belief, ABC Insurance Company had in full force and effect policy(ies) of insurance issued to MMSD that provided liability coverage for the acts alleged in this complaint.

## FACTS

### I.      *J.K.'s IEP*

14.     Prior to February 13, 2019 and at all times relevant, J.K. was the subject of an individualized education program ("IEP").

15.     As of February 13, 2019, J.K.'s IEP included behavioral strategies, including strategies to address problems after they occur. Those strategies were to provide J.K. with a predesignated safe space to calm; to provide sufficient time and space; and to provide access to a trusted adult and opportunity to call her mother.

16.     As part of her IEP, MMSD indicated that staff were to avoid "too much talking" or yelling" and instead rely on "calm redirection of expectations" and reminders for J.K. to go to a predesignated safe space, as well as an opportunity to speak to her mother or other trusted adult.

17.     Price requested J.K.'s IEP following a series of behavioral incidents which impacted J.K.'s academic performance.

18.     J.K.'s IEP noted that J.K. responded to frustration by using inappropriate language, walk away from staff, shut down, yell and cry.

19.     J.K.'s IEP also noted J.K.'s asthma diagnosis.

## II.      *MMSD Policy on Restraint & Seclusion*

20.      At all times relevant, MMSD maintained a "Guide to Restraint and Seclusion."

21.      The Guide to Restraint and Seclusion defined "Restraint" as "A restriction that immobilizes or reduces the ability of a pupil to freely move his or her torso, arms, legs, or head. Briefly touching or holding a pupil's hand, arm, shoulder or back to calm, comfort or redirect the pupil *is not deemed to be restraint*." (emphasis original).

22.      The Guide to Restraint and Seclusion included the following "Restraint Precautions": Medical contraindications; head, neck, chest; no corporal punishment; no chemical or mechanical restraint; only as long as necessary to resolve "Clear Present Imminent Risk."

23.      The Guide to Restraint and Seclusion indicated that Restraint and Seclusion may only be used when there is a Clear Present Imminent Risk to Physical Safety and when it is the least restrictive intervention feasible.

## III.     *Wisconsin Statute - Restraint and Seclusion*

24.      Wisconsin Statute section 118.305 governs the use of seclusion and physical restraint in Wisconsin schools.

25.      Pursuant to section 118.305(1)(g), "Physical restraint" means a restriction that immobilizes or reduces the ability of a pupil to freely move his or her torso, arms, legs, or head.

26.      Section 118.305(3) reads as follows:

(3)      Physical restraint; conditions for use. A covered individual may use physical restraint on a pupil at school only if all of the following apply:

4

(a)    The pupil's behavior presents a clear, present, and imminent risk to the physical safety of the pupil or others and it is the least restrictive intervention feasible.

(b)    There are no medical contraindications to its use.

(c)    The degree of force used and the duration of the physical restraint do not exceed the degree and duration that are reasonable and necessary to resolve the clear, present, and imminent risk to the physical safety of the pupil or others.

(d)    None of the following maneuvers or techniques are used:

    1.    Those that do not give adequate attention and care to protecting the pupil's head.

    2.    Those that cause chest compression by placing pressure or weight on the pupil's chest, lungs, sternum, diaphragm, back, or abdomen.

    3.    Those that place pressure or weight on the pupil's neck or throat, on an artery, or on the back of the pupil's head or neck, or that otherwise obstruct the pupil's circulation or breathing.

(e)    It does not constitute corporal punishment, as defined in s. 118.31 (1).

(f)    The covered individual does not use a mechanical or chemical restraint on the pupil. The use of supportive equipment to properly align a pupil's body, assist a pupil to maintain balance, or assist a pupil's mobility, under the direction and oversight of appropriate medical or therapeutic staff, does not constitute the use of a mechanical restraint.

27.    Section 118.31 defines "corporal punishment" as "the intentional infliction of physical pain which is used as a means of discipline."

## IV.   *Mueller-Owens's History at Whitehorse Middle School*

28.    Prior to February 13, 2019, Mueller-Owens had received Non-Violent Crisis Intervention training though MMSD.

29.    Prior to February 13, 2019, Mueller-Owens had met and interacted with J.K., including working with J.K. and Price regarding behavioral issues at Whitehorse Middle School.

30.    Mueller-Owens knew or should have known the contents of J.K.'s IEP, including the various strategies identified as appropriate responses to behavioral incidents.

31.     Mueller-Owens knew or should have known the various policies and statutes that governed the use of physical restraint and/or force involving students.

**V.     _Events of February 13, 2019_**

32.     On February 13, 2019, J.K. was attending school at Whitehorse Middle School.

33.     That day, J.K.'s teacher, Barbara Pietz, asked J.K. to leave the classroom. Pietz indicated that she had a scent allergy and that J.K. smelled too strongly of perfume.

34.     J.K. refused to leave the classroom after the request from Pietz.

35.     Pietz repeated her request that J.K. leave the room.

36.     J.K. again refused to leave the classroom.

37.     In response, Pietz called Mueller-Owens and Tammy Gue, a Whitehorse Middle School Special Ed Assistant, for behavioral support.

38.     Mueller-Owens and Gue went to Pietz's classroom.

39.     Upon the arrival of Mueller-Owens and Pietz, Mueller-Owens approached J.K. near the classroom desks.

40.     J.K. moved several times within the classroom, and Mueller-Owens followed her.

41.     Mueller-Owens repeatedly asked J.K. to leave the classroom.

42.     J.K. continued to refuse to leave the classroom.

43.     Mueller-Owens thereafter instructed Pietz to have the rest of the students leave the classroom.

44.     J.K. responded that she would leave the classroom so the rest of the students did not have to.

45.     After J.K. responded that she would leave the classroom, Mueller-Owens was standing outside the classroom door.

46.     J.K. attempted to close the classroom door with Mueller-Owens outside.

47.     Mueller-Owens put his foot in the door and opened it.

48.     At that point, Mueller-Owens put his hand on J.K.

49.     J.K. responded and told Mueller-Owens not to touch her.

50.     Mueller-Owens began pushing J.K. out of the classroom using an open hand on her back.

51.     J.K. resisted Mueller-Owens's contact.

52.     Mueller-Owens struck J.K. several times.

53.     Mueller-Owens further restricted J.K.'s movements by placing her in a restrictive hold.

54.     Gue attempted to intervene and end the physical contact between Mueller-Owens and J.K.

55.     Mueller-Owens thereafter pushed J.K. across a hallway and into a bank of lockers.

56.     As a result of Mueller-Owens use of force, Mueller-Owens and J.K. were thrown to the ground.

57.     Mueller-Owens also pulled several braids of hair out of J.K.'s scalp.

58.     After Mueller-Owens threw J.K. to the ground, Gue and Mueller-Owens restrained J.K. by pinning her to the ground.

59.     Throughout the physical contact from Mueller-Owens, J.K. continuously responded and indicated that she did not consent to be touched.

60.     At no point did Mueller-Owens direct J.K. to a predesignated safe space, as recommended by her IEP.

61.     At no point did Mueller-Owens attempt to deescalate the situation, including by allowing J.K. to remain in the classroom, as recommended by her IEP.

62.     At no point did Mueller-Owens offer J.K. an opportunity to talk to her mother, as recommended by her IEP.

63.     Mueller-Owens's use of force against J.K. violated the MMSD Guide to Restraint and Seclusion and Wis. Stat. § 118.305.

64.     At all times relevant, Mueller-Owens was carrying out duties as an employee of the Madison Metropolitan School District and acting within the scope of his employment.

65.     As a result of Mueller-Owens physical contact, J.K. has received medical care, incurred medical expenses, and has experienced pain, suffering, disruption of her education, loss of enjoyment of life, and other damages.

## COUNT I
## UNLAWFUL SEIZURE – 42 U.S.C. § 1983

66.     Paragraphs 1 through 65 are re-alleged and incorporated by reference herein.

67.     The actions of Mueller-Owens in physically seizing and using force on J.K. in these circumstances violated J.K.'s constitutional rights pursuant to the Fourth Amendment to the United States Constitution to be secure in her person against unreasonable seizure.

68.     At the time of the unreasonable seizure, Mueller-Owens was acting under the color of state law.

69.     The actions of Mueller-Owens, as alleged in this Complaint, were the direct and proximate cause of the constitutional violations described above and J.K.'s injuries.

## COUNT II
## EXCESSIVE FORCE – 42 U.S.C. § 1983

70.   Paragraphs 1 through 69 are re-alleged and incorporated by reference herein.

71.   The actions of Mueller-Owens in striking, grabbing, pushing, tackling and otherwise using force in these circumstances violated J.K.'s constitutional rights pursuant to the Fourth Amendment to the United States Constitution to be secure in her person against unreasonable seizure in the form of excessive force.

72.   At the time of the use of excessive force, Mueller-Owens was acting under the color of state law.

73.   The actions of Mueller-Owens, as alleged in this Complaint, were the direct and proximate cause of the constitutional violations described above and J.K.'s injuries.

## COUNT III
## BATTERY

74.   Paragraphs 1 through 73 are re-alleged and incorporated by reference herein.

75.   Mueller-Owens intentionally touched J.K., causing her harm, in ways including but not limited to the following:

   a.   Pushing her;

   b.   Grabbing her;

   c.   Tackling her;

   d.   Hitting her;

   e.   Pulling her hair;

76.   J.K. did not consent to Mueller-Owens's touch.

77.   At the time of the acts and omissions described in the Count, Mueller-Owens was acting as an employee of MMSD.

78.     The actions of Mueller-Owens, as alleged in this Complaint, were the direct and proximate cause of the constitutional violations described above and J.K.'s injuries.

**COUNT IV**
**NEGLIGENCE**

79.     Paragraphs 1 through 78 are re-alleged and incorporated by reference herein.

80.     Mueller-Owens was negligent in ways including, but not limited to, the following:

    a.      Escalating the disciplinary situation with J.K., in violation of her IEP, including by failing to redirect her to a predesignated safe place, failing to contact a trusted adult and failing to deescalate the situation;

    b.      Violating the standard set forth in MMSD policies regarding Restraint and Seclusion, including by using Restraint without the presence of a clear, present and imminent risk, using Restraint when it was not the least restrictive intervention feasible; using Restraint on a student with a known medical contraindication (asthma); using excessive force in restraint and failing to give adequate attention to J.K.'s head and neck.

81.     At the time of the acts and omissions described in the Count, Mueller-Owens was acting as an employee of MMSD.

82.     The actions of Mueller-Owens, as alleged in this Complaint, were the direct and proximate cause of the constitutional violations described above and J.K.'s injuries.

**COUNT V**
**PUNITIVE DAMAGES**

83.     Paragraphs 1 through 82 are re-alleged and incorporated by reference herein.

84.     On information and belief, Mueller-Owens acted with intentional disregard and deliberate indifference of the rights of J.K.

85.     Mueller-Owens actions, taken with intentional disregard and deliberate indifference of the rights of J.K. were the direct and proximate cause of the constitutional violations described above and J.K.'s injuries.

**COUNT VI**
**INDEMNIFICATION**

86. Paragraphs 1 through 82 are re-alleged and incorporated by reference herein.

87. MMSD and ABC Insurance Company are required to indemnify Mueller-Owens pursuant to sec. 895.46, Stats. for any judgment entered against him because Mueller-Owens was acting within the scope of his employment when he committed the alleged acts and omissions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mikiea Price, as mother and next friend of J.K., a minor, requests judgment as follows:

a)     For compensatory damages in an amount to be determined at trial;

b)     For the costs, disbursements, and fees incurred by the Plaintiffs in this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1983;

c)     For such other and further relief as the Court finds just and equitable.

## **JURY DEMAND**

The plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted this 11th day of October, 2019

                /s/ Daniel S. Lenz
                Daniel S. Lenz
                Lawton & Cates, S.C.
                P.O. Box 2965
                Madison, WI  53701-2965
                (608) 282-6200
                (608) 282-6252 (Facsimile)
                dlenz@lawtoncates.com
                *Attorney for Mikiea Price, mother and next friend of*
                *J.K., a minor*