IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MIKIEA PRICE,
as mother and next friend of J.K., a minor,

              Plaintiff,

      v.

ROBERT MUELLER-OWENS, MADISON
METROPOLITAN SCHOOL DISTRICT AND
LIBERTY MUTUAL INSURANCE COMPANY,
              Defendants.

OPINION AND ORDER

19-cv-854-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      J.K. is a junior high school age student in the Madison Metropolitan School District.  In 2019, while she was a sixth-grade student, she was involved in an altercation at school with defendant Robert Mueller-Owens, who was employed by the district as a positive behavior support coach at the time.  J.K. alleges that Mueller-Owens pulled her hair, pushed, punched, hit, and threw her after trying to force her to leave a classroom.  J.K.'s mother, Mikiea Price, filed this suit under 42 U.S.C. § 1983 and state law, seeking to recover damages from Mueller-Owens for J.K.'s alleged injuries.  Price also named the school district and Liberty Mutual Insurance Company, which insures the district, as defendants. (Because Price, the school district and Liberty Mutual play no role in the resolution of this motion, I will refer to J.K simply as "plaintiff" and Mueller-Owens as "defendant" for the remainder of this opinion.)

      Now before the court is defendant's motion for summary judgment.  Dkt. #21. Defendant contends that plaintiff's federal constitutional claims should be dismissed for plaintiff's failure to exhaust her administrative remedies and her inability to prove her claims. Defendant also argues that plaintiff's constitutional and state law claims should be dismissed on

1

immunity grounds.  Finally, defendant filed a motion requesting that plaintiff's complaint be dismissed because she destroyed important evidence.  Dkt. #32.  Because there are genuine and material factual disputes, I am denying defendant's motion for summary judgment.  I will also deny defendant's request for dismissal of plaintiff's case as a sanction for spoliation.

Turning now to the undisputed facts, I note that many of the parties' proposed findings were not helpful in determining which facts are material and whether the parties have genuine factual disputes.  As the moving party, defendant had to show that there were no genuine disputes of material fact.  A significant number of defendant's proposed findings were quotes from the deposition testimony of individual eyewitnesses.  However, what one person said during a deposition cannot be treated as an undisputed fact for purposes of summary judgment if someone else presents an entirely different version of events.  And defendant made few attempts to distill an undisputed version of events from the various eyewitness testimony.

Both sides spent a significant amount of time proposing findings about immaterial disputes, such as whether plaintiff attended gym on the morning of the incident; whether she sprayed perfume, rather than air freshener; whether she was late to class; and whether plaintiff's teacher was justified in calling for behavioral support.  Such proposed facts are immaterial at summary judgment because defendant did not know about them at the time he engaged with plaintiff during the incident at issue.

After eliminating the parties' immaterial or unsupported proposed findings, I find the following facts to be undisputed for the purpose of summary judgment, except where noted otherwise.

# UNDISPUTED FACTS

## A.  The Parties

During the 2018 to 2019 school year, plaintiff J.K. was eleven years old and a sixth-grade student at Whitehorse Middle School in Madison, Wisconsin.  Plaintiff was 5 feet, 4 inches tall and weighed more than 100 pounds.  Defendant Robert Mueller-Owens worked at the middle school as a positive behavior coach.  Defendant was 5 feet 11 inches tall and weighed 273 pounds.  Defendant's role at the school was to cultivate a positive environment for students and teachers.  He helped students learn behavior strategies, and he helped teachers navigate and repair difficult relationships with students.  Defendant had been trained in crisis intervention and de-escalation techniques.

## B.  Plaintiff's Behavior and Individualized Education Program

Plaintiff had difficulty during her sixth grade year at Whitehorse.  She was bullied by other students and she thought that school personnel, including defendant, sided with other students against her.  Plaintiff had difficulty regulating her emotions and she sometimes acted out by yelling, swearing, crying, arguing, making threats, or using violence against teachers and other students.  On one occasion, plaintiff chased another student with scissors while making threats that she would harm him.  (Defendant proposed several facts regarding specific behavior incidents involving plaintiff that are listed in a behavior report.  However, the specific incidences would be relevant only if defendant was aware of them at the time of the incident at issue in this case.  Defendant did not propose any facts or submit evidence showing that he was aware of all of the incidents in plaintiff's behavior report.)

Defendant had interacted with plaintiff regarding her behavior and had observed that she could have explosive emotions. The parent of the student who was chased in the scissors incident had called defendant to ask why plaintiff was permitted to remain at school and to report that her son was afraid for his life because of plaintiff's conduct.

Plaintiff's mother was concerned about plaintiff's social, emotional and behavioral functioning. Early in the 2018-2019 school year, plaintiff's mother requested that the school develop an individualized education program for plaintiff. (An "individualized education program" is a personalized plan, provided for by the Individuals with Disabilities in Education Act, that is intended to insure that a child with physical or intellectual disabilities receives an appropriate education. 20 U.S.C. §§ 1400-82.) The school district issued an individualized education program for plaintiff in December 2019, and plaintiff started receiving special education services as a result. Plaintiff's plan included a behavior safety plan that identified strategies to help plaintiff de-escalate her emotions and behavior, including: (1) calmly redirect expectations; (2) remind plaintiff to go to a predesignated safe space; or (3) offer plaintiff an opportunity to call her mother or talk to another trusted adult. The plan directed that staff should avoid "too much talking" and yelling. Defendant was not involved in the development of plaintiff's individualized education program and he did not review the plan or plaintiff's behavioral assessment.

## C. February 13, 2019 Incident

During the homeroom period on February 13, 2019, someone sprayed air freshener inside the door of the classroom used by Barbara Pietz, a sixth-grade science and math teacher.

Plaintiff was not assigned to Pietz's classroom for the homeroom period.  But Pietz thought that plaintiff had been in the hallway and had sprayed the air freshener into the classroom, so she called behavior support and asked if someone could take the air freshener away from plaintiff because it was making it difficult for Pietz to breathe.  (Plaintiff admits that she had air freshener at school, but denies that she sprayed it into Pietz's classroom and states that she kept the air freshener in her locker.  Plaintiff says that she did spray perfume on herself, either in the hallway or in Pietz's classroom.)

Meanwhile, plaintiff was assigned to a different homeroom class.  She had had some behavior problems during class, and had been asked to leave.  She went to defendant's office to discuss her behavior, accompanied by Tambercia Gue, a special education and behavior support assistant.  (Plaintiff attempts to dispute the evidence regarding her trouble during homeroom period with the deposition testimony of Gue, but plaintiff admitted at her own deposition that she met with defendant during her homeroom period to discuss behavior issues.  Dkt. #15 at 62-64.)

Plaintiff was scheduled to attend Pietz's second class of the day.  Plaintiff arrived a few minutes late to class and she did not sit in her assigned seat.  (Plaintiff attempts to dispute this fact by citing the deposition testimony of Gue, but plaintiff admitted at her deposition that she was late to class and that she did not sit in her assigned seat.  Id. at13-14.)  Plaintiff began talking to her friends.  Pietz asked plaintiff several times to sit in her seat, but plaintiff continued talking to her friends.  (According to plaintiff, she could not sit in her seat because someone else was sitting in it, and the person refused to move.)  Pietz then told plaintiff that she would stand next to plaintiff until she complied, and plaintiff became irritated.  (According to Pietz, plaintiff

told Pietz to get out of her face and threatened to spray air freshener at Pietz. Plaintiff denies saying this to Pietz, but admits that she sprayed perfume on herself and that Pietz did not like it.) Pietz then called behavioral support and asked that someone remove plaintiff from the class.

Defendant responded to Pietz's call for behavior support. He arrived at Pietz's classroom and motioned for plaintiff to come to the door of the classroom. Plaintiff refused. Using a calm voice, defendant tried again to get plaintiff to come to the door. Plaintiff began moving around the classroom, so defendant entered the classroom, attempting to get plaintiff to follow him out. Defendant told plaintiff that the situation was not a big deal and that they could resolve the situation easily. Defendant tried for several minutes to get plaintiff to leave. At one point, plaintiff went to the pencil sharpener and sharpened a pencil. (Defendant says that, at one point, plaintiff told him that she was "fitting to swing on him." Plaintiff denies saying this.)

Eventually, plaintiff came near defendant, and defendant attempted to nudge plaintiff out of the classroom. (Defendant says that he put his arm gently around plaintiff's shoulder, in a friendly manner, to encourage her to go into the hall. Plaintiff says that defendant shoved her on her back with two hands from behind her.) Plaintiff became very upset and screamed at defendant not to touch her, yelling "don't fucking touch me. I'm not fucking going nowhere, you white bald headed motherfucker." Defendant backed away, but continued to ask plaintiff to come outside. Plaintiff became emotional and began to yell more obscenities, such as, "I'm not fucking leaving, shut the fuck up, leave me the fuck alone, don't touch me." Defendant called the school security officer, and defendant asked Pietz to take the other students to the library.

Plaintiff then said that the other students could stay and that she would leave. She started to walk out the door. Plaintiff attempted to shut the door, but defendant put his foot

6

between the door and the jam, causing the door to bounce off his foot. When the door opened again, plaintiff and defendant were looking at each other.

What happened next is the central dispute in this case. According to defendant, plaintiff came back through the classroom door, wildly punching defendant in the face and head and knocking his glasses off. Defendant says he put his hands out and attempted to place plaintiff in a "bear hug" to prevent her from hitting him or returning to the classroom. Gue then came running over and attempted to break up the scuffle, yelling at plaintiff to stop. Defendant says he was walking forward, trying to prevent plaintiff from going back into the classroom, and that he and Gue lost their balance and they all fell to the floor.

According to plaintiff, after she attempted to close the door, defendant punched her in the arm and tried to push her out the door, before she ever made any physical contact with him. Plaintiff says that after defendant punched her, she turned around and started hitting him. Defendant continued to punch plaintiff, all over her body, and pushed her away from the classroom. Gue joined the scuffle and, as defendant was shoving plaintiff across the hall, defendant, Gue and plaintiff hit the lockers across the hall. Plaintiff says that defendant then picked her up and slammed her to the floor, causing her head to hit the ground.

A camera in the school hallway captured a portion of the incident that occurred in the hallway, but the incident occurred at the very top of the screen and the recording provided to the court is blurry. The video shows what appears to be an adult with outstretched arms pushing a smaller person across the hallway into a bank of lockers. Another adult runs toward them and reaches them at the lockers, at which point all three individuals go to the ground.

The remainder of the material facts are undisputed. It is undisputed that Gue and

defendant landed on top of plaintiff.  It is also undisputed that, at some point during the altercation, two or three braids were pulled out of plaintiff's head and defendant's glasses were broken.  The school's security officer arrived shortly after the scuffle, and defendant left the hallway to report what had happened to the principal.

Plaintiff got up and Gue took her into an empty classroom across the hall.  Plaintiff called her mother, who called the police and came to the school.  When plaintiff's mother arrived, plaintiff was writing about what had happened.  (Plaintiff's mother took the document home, but lost track of it after she changed residences in December 2019.)

The police arrived at the school and interviewed plaintiff.  Plaintiff told the police that defendant had hit her with a closed fist, and that she had hit him in response.  She said that defendant then pushed her out of the classroom into the lockers and slammed her to the floor. She reported that her lip was bleeding and that some of her braids had been pulled out.  When paramedics arrived to the scene, plaintiff reported that she had pain to her left upper arm and the back of her head and that her hair had been pulled out.  She denied any other pain or symptoms.  Upon examination, no trauma was found.  Plaintiff and her mother declined ambulance transport to the emergency room.  Plaintiff later testified that her head, back and body hurt after the incident.


OPINION

Plaintiff raised six claims in her complaint:

(1) Defendant violated her Fourth Amendment rights by unlawfully seizing her;

(2) Defendant violated her Fourth Amendment rights by using excessive force against her

during the seizure;

(3) Defendant battered plaintiff in violation of state law;

(4) Defendant acted negligently in failing to follow plaintiff's individualized education program and school district policies regarding restraint and seclusion;

(5) Plaintiff is entitled to punitive damages; and

(6) Madison Metropolitan School District and Liberty Mutual Insurance Company must indemnify defendant.

Defendant has moved for summary judgment on all of plaintiff's claims. Defendant contends that plaintiff's constitutional claims fail because: (1) plaintiff failed to exhaust her administrative remedies as required under federal education law; (2) plaintiff was not seized under the Fourth Amendment and, even if she was, defendant's actions were reasonable; and (3) defendant is entitled to qualified immunity. Defendant contends that plaintiff's state law claims are barred on immunity grounds and because plaintiff's allegations and evidence do not support any state law claim. Finally, defendant argues that plaintiff's claims should be dismissed because her testimony has been so inconsistent and unreliable that no jury could credit it and because plaintiff destroyed key evidence and ignored her discovery obligations. I address each of these arguments below, starting with defendant's argument about spoliation.

## A. Spoliation

Defendant seeks a ruling that plaintiff is responsible for destroying both the handwritten account that she wrote shortly after the incident and comments to social media posts regarding the incident. Defendant contends that plaintiff should be sanctioned with dismissal of her case

or, at the very least, an adverse inference that the destroyed evidence would support defendant's account of what happened during the incident.

I agree with defendant that plaintiff should have preserved the handwritten statement and social media posts. Plaintiff should have known that the note, at least, was relevant to this litigation, which was pending at the time the evidence was lost or destroyed. However, a sanction for spoliation of evidence is appropriate only where there is a showing of bad fath, such as a destruction of evidence to hide adverse information. Bracey v. Grondin, 712 F.3d 1012, 1019 (7th Cir. 2013); Conner v. Rubin-Asch, 793 F. App'x 427, 431 (7th Cir. 2019). Defendant has not shown that plaintiff destroyed the evidence in bad faith or that defendant is prejudiced by the destruction. Defendant provides no basis for his speculation that plaintiff's handwritten note might have been more accurate or favorable to defendant than plaintiff's subsequent testimony regarding the incident. A teacher reported hearing plaintiff tell her mom, on the phone and immediately after the incident, that defendant had hit her, dkt. #18 at 8, and plaintiff's account to the police shortly after the incident was consistent with her subsequent testimony. Defendant also does not explain why he thinks the deleted comments and "likes" on social media posts would be adverse to plaintiff or even relevant to this case. Therefore, I find that defendant has not shown a adequate basis for imposing a sanction plaintiff for spoliation of evidence.

## B. Exhaustion

Defendant contends that plaintiff's federal constitutional claims alleging unlawful seizure and excessive force should be dismissed because she has not satisfied the exhaustion

requirements of the Individuals with Disabilities Education Act (IDEA).  20 U.S.C. §§ 1400-82. That Act guarantees children with disabilities a "free, appropriate public education," and requires a public school to provide a disabled student special education and related services in conformity with the student's individualized education program.  Id. §§ 1401(9)(D), 1412.

To bring a civil action for violation of the IDEA, a plaintiff must first follow the administrative exhaustion requirements created by the statute.  Id. § 1415(i)(2)(A).  The exhaustion requirements apply to all claims brought under the IDEA, as well as all claims that could have been brought under the IDEA but are brought under a different statute.  Id. § 1415(l).  For example, if a student brings a claim under the Americans with Disabilities Act, the Rehabilitation Act, or § 1983, contesting the adequacy of a special education program, it is likely that the exhaustion requirements of the IDEA would apply.  Fry v. Napoleon Community Schools, 137 S. Ct. 743, 755 (2017).  However, the only "relief" available under the IDEA is a "free, appropriate public education."  Id. at  748 (citing § 1412(a)(1)(A)).  Thus, any claims requesting relief unrelated to the denial of a free, appropriate public education do not require the plaintiff to exhaust her administrative remedies.  Id. at 754 ("[E]xhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee" of a "free, appropriate public education.").

To determine whether a suit seeks relief available under the IDEA, for denial of a free, appropriate public education, courts must look to the "substance, or gravamen, of the plaintiff's complaint."  Id. at 752.  This does not mean the court should look solely at labels or terms listed in the plaintiff's complaint.  Id. at 755 (inquiry does not depend on whether complaint includes or omits words "free, appropriate public education" or "individualized education program").

11

Rather, the question is whether the essence of the complaint seeks redress for a school's failure to provide a free, appropriate public education.  Id.  If it does, then exhaustion of administrative remedies is required.  Id.

Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has considered the question whether claims based on a seizure or use of force against a student with an individualized education program must be exhausted under the IDEA.  However, in Fry, the Supreme Court offered two questions that can help courts determine whether a plaintiff's claim requires IDEA exhaustion.  Id.  First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school, such as a public theater or library?  Second, could an adult at the school, such as an employee or visitor, have raised essentially the same grievance?  Id.  If the answer to those questions is "yes," a complaint is unlikely to be about denial of a free, appropriate public education, and exhaustion is not required.  Id.  If the answer to both questions is "no," then the complaint probably does concern a free, appropriate public education, regardless whether the claim is brought under the IDEA or a different statute.  Id.

In this instance, plaintiff brings her claims under § 1983 and state law, not the IDEA. She did not attempt to exhaust her claims using IDEA administrative exhaustion procedures. Defendant contends that plaintiff's claims could have been brought under the IDEA because plaintiff is essentially arguing that defendant denied her a free, appropriate public education. Defendant points out that plaintiff refers repeatedly to her individualized education program in her complaint and alleges that defendant failed to know and follow the steps outlined in her behavior support plan.

12

Defendant's arguments are not persuasive.  The allegations of plaintiff's complaint do not suggest that her constitutional claims depend on her having a disability, on defendant's having violated plaintiff's individualized education program, or on the denial of a free, appropriate public education.  The complaint does not allege differential treatment as the result of a disability or the deprivation of a public school education.  Plaintiff's complaint discusses plaintiff's individualized education program, primarily in the context of her state law negligence claim, but the crux of her federal claims is about a single incident of alleged excessive force and unlawful seizure.  Considering the questions set forth in <u>Fry</u>, plaintiff could have brought the same claims for excessive force and unlawful seizure if a state actor had pushed, hit, and slammed her to the ground at another public facility, such as a library or theater.  An adult at the school could have sued a school employee who forcibly restrained, pushed, hit, or tackled the adult.

Defendant cites a handful of cases in which courts outside this circuit held that claims involving the use of restraints by school officials required IDEA exhaustion.  <u>E.g.</u>, <u>J.L. by & through Leduc v. Wyoming Valley West School District</u>, 722 F. App'x 190, 193 (3d Cir. 2018); <u>P.G. by & through R.G. v. Rutherford County Board of Education</u>, 313 F. Supp. 3d 891, 900 (M.D. Tenn. 2018).  However, there are also several cases in which courts concluded that claims about physical force against a student do not require IDEA exhaustion.  <u>See, e.g.</u>, <u>Doe Child by Doe v. Stark County Community Unit School District #100</u>, No. 19-1215-MMM, 2019 WL 6702538, at *3 (C.D. Ill. Dec. 9, 2019) (disabled student who was physically abused by school bus aide did not need to exhaust claims under IDEA);  <u>J.P. v. Williamson County Education Services</u>, No. 3:16-CV-879-NJR-DGW, 2018 WL 9651501, at *5 (S.D. Ill. Mar. 27, 2018)

(constitutional claims based on allegations that school personnel confined student in closet and used harmful armlock, wristlock, and fingerlock restraint techniques did not require exhaustion under IDEA); P.H. by Luna v. Tehachapi Unified Sch. Dist., No. 1:L17-cv-00257-DAD-JLT, 2017 WL 3085020, at *4 (E.D. Cal. Jun. 9, 2017) (claims based on allegations that school officials isolated plaintiff from other children and physically and psychologically abused her because of her disability did not require IDEA exhaustion).

The second set of cases is more persuasive, and is also consistent with the Supreme Court's discussion in Fry, setting out an example of a claim based on allegations that "a teacher, acting out of animus or frustration, strikes a student with a disability." Fry, 137 S. Ct. at 756. Although the lawsuit "could be said to relate, in both genesis and effect, to the child's education . . . the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion." Id.

In this instance, the gravamen of plaintiff's federal claims is not to obtain relief for the denial of a free, appropriate public education, and the administrative process would not afford plaintiff the relief she is seeking (compensatory damages). Accordingly, plaintiff was not required to exhaust the administrative procedures under the IDEA before bringing her federal claims.

## C.  Unlawful Seizure and Excessive Force

Plaintiff alleges that defendant unlawfully seized her and used excessive force when he pushed her, punched her, grabbed her, and slammed her to the ground. Defendant argues that plaintiff cannot show that he seized her or that his actions were unreasonable. In the

14

alternative, defendant argues that he is entitled to qualified immunity on plaintiff's constitutional claims.

1. Legal standard

As an initial matter, defendant maintains that plaintiff's unlawful seizure and excessive force claims should be analyzed under the Fourteenth Amendment, not the Fourth Amendment. Defendant argues that plaintiff must meet a stringent standard that applies to substantive due process claims, and must show that defendant's actions were inspired by malice or sadism and were so severe, brutal and inhumane that they were "literally shocking to the conscience." Dfts.' Br., dkt. #24, at 41-42.

Defendants' argument for a stringent substantive due process standard is not persuasive for three reasons. First, the Supreme Court has not identified the appropriate standard for evaluating an unlawful seizure or excessive force claim by a student against a school official. However, the Supreme Court has applied the Fourth Amendment's protections to searches of students in public schools, New Jersey v. T.L.O., 469 U.S. 325 (1985), and the Court of Appeals for the Seventh Circuit has extended this protection to seizures of students by public school officials. In Wallace by Wallace v. Batavia School District 101, 68 F.3d 1010, 1013 (7th Cir. 1995), a student brought Fourth and Fourteenth Amendment claims based on allegations that a teacher grabbed the student's wrist and arm while attempting to remove the student from a classroom. The court applied the Fourth Amendment's objective reasonableness standard, stating that students have Fourth Amendment rights at school. Id. In addressing the plaintiff's Fourteenth Amendment due process claim, however, the court noted that it had "never

15

acknowledged such a substantive due process right [to avoid corporal punishment at school], much less established a test for deciding when it has been violated." Id. at 1015-16. The court concluded that plaintiff's claim should be evaluated under the Fourth Amendment standard.

Defendant acknowledges Wallace, but cites one case, B.B. v. Appleton Area School District, No. 12-C-115, 2013 WL 3972250 (E.D. Wis. July 31, 2013), in which the court analyzed a claim about a teacher's physical abuse as a substantive due process claim under the Fourteenth Amendment. Despite the court's decision in B.B. to apply the Fourteenth Amendment, Wallace has not been abrogated or overruled and remains controlling law in this circuit. See, e.g., Doe Child by Doe, No. 19-1215-MMM, 2019 WL 6702538, at *5 (citing Wallace and applying Fourth Amendment to student's excessive force and unlawful seizure claims); Wordlow v. Chicago Board of Education, No. 16-CV-8040, 2018 WL 6171792 (N.D. Ill. Nov. 26, 2018) (same); Crecy v. Kankakee School District #111, No. 15-CV-1014, 2016 WL 10789394, at *10 (C.D. Ill. June 20, 2016) (declining to follow B.B. and applying Wallace to unlawful seizure and excessive force claims instead). See also E.W. by & through T.W. v. Dolgos, 884 F.3d 172, 179 (4th Cir. 2018) (applying Fourth Amendment to student's excessive force claim); Doe v. Hawaii Department of Education, 334 F.3d 906 (9th Cir. 2003) (same).

Second, the Supreme Court has instructed courts not to rely on a substantive due process claim if a challenge to a government action falls under a more explicit constitutional guarantee, such as the Fourth or Eighth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). Here, plaintiff alleges that a state actor used excessive force against her while conducting an unlawful seizure. These claims fall explicitly under the Fourth Amendment. Id. (holding that standards of the Fourth Amendment, rather than substantive due process, govern a claim of

excessive force).

Finally, even if plaintiff's claim could be analyzed under the Fourteenth Amendment, defendant has failed to show that plaintiff's claim would be subject to the stringent standard he proposes.  Defendant's proposed due process standard is drawn from a 1980 case from the Fourth Circuit, Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980), in which the court held that force used against a student violates the constitution only if the force caused severe injury, was inspired by malice or sadism and was so brutal and inhuman that it "shocked the conscience." Similarly, the court in B.B. applied a "shocks the conscience" standard that required a showing that the force was applied maliciously and sadistically for the very purpose of causing harm. However, Hall and B.B. were decided before the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015).  In Kingsley, the Court revisited the substantive due process standard as it applied to a pretrial detainee's excessive force claim against a guard.  The Court concluded that the standard for a pretrial detainee suing under the Fourteenth Amendment is "objective," and merely requires showing that "the force purposely or knowingly used against him was objectively unreasonable."  Id. at 397.  The Court stated that it was not necessary to show malicious and sadistic purpose to cause harm for liability under substantive due process. Id. at 402.

The Court of Appeals for the Seventh Circuit has not yet considered how the Kingsley standard would apply in school cases, but even before Kingsley, the court criticized the "shocks the conscience" phraseology and did not require a showing of malice, brutality or sadism in all substantive due process cases.  Slade v. Board of School Directors of City of Milwaukee, 702 F.3d 1027, 1033 (7th Cir. 2012).  And at least one circuit court has held that the Kinglsey

17

standard applies to all excessive force claims brought under the Fourteenth Amendment, not just those brought by pretrial detainees. Edrei v. Maguire, 892 F.3d 525, 537 (2d Cir. 2018). See also Wordlow, No. 16-CV-8040, 2018 WL 6171792, at *7 (citing Kingsley in excessive force in school case).

For these reasons, I will apply the Fourth Amendment objective reasonableness standard set forth in Wallace to plaintiff's unlawful seizure and excessive force claims.

## 2. Fourth Amendment claims

Plaintiff's excessive force and unlawful seizure claims go hand in hand. The Fourth Amendment prohibits unreasonable searches and seizures. Marion v. City of Cordydon, 559 F.3d 700, 705 (7th Cir. 2009). A seizure is unreasonable under the Fourth Amendment if it is accomplished through the use of excessive force. Gonzalez v. City of Elgin, 578 F.3d 526, 541 (7th Cir. 2009). Whether the force used to effect a seizure is excessive depends on the totality of the circumstances under an objective reasonableness standard. Marion, 559 F.3d at 705. Because public school students are in a unique position and enjoy "less than the full constitutional liberty protection afforded those persons not in school," deprivations of liberty in schools often "serve the end of compulsory education and do not inherently pose constitutional problems." Wallace, 68 F.3d at 1014. To maintain order and discipline, a teacher or administrator may need to seize a student "in the face of provocative or disruptive behavior." Id. A school official who seizes a student violates the Fourth Amendment "only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." Id. In evaluating reasonableness, courts may consider factors such as the school

18

context, the  student's age, size, and demeanor, relationship between the need for force and the amount used, the extent of the student's injury, whether the student presented a safety concern and whether the student was actively resisting.  Kinglsey, 576 U.S. at 397; E.W. by & through T.W., 884 F.3d at 184.  However, the standard does not ask what the teacher's intentions were or whether the student thought the teacher's conduct was "out of bounds."  Wallace, 68 F.3d at 1013-14.   In this instance, the question is whether plaintiff has presented enough evidence from which a reasonable jury could find that defendant's seizure of her was objectively unreasonable, and that defendant used excessive force in effecting the seizure.  Taking into account the evidence presented by plaintiff, and construing all the evidence in her favor, defendant's initial interactions with plaintiff were reasonable.

Defendant had been called to a classroom by a teacher who reported that plaintiff was being disruptive and refusing to follow directions.  Defendant attempted to get plaintiff to comply with his requests to leave the classroom, and she refused.  Defendant spoke in a calm voice.  Plaintiff began disrupting class by yelling and becoming angry, and defendant was concerned for the safety of other students in light of plaintiff's past behavior about which defendant was aware.  It was objectively reasonable for defendant to attempt to remove plaintiff from the classroom.  Effecting a seizure was a reasonable action to prevent disruptive behavior that could endanger students or staff.  Wallace, 68 F.3d at 1014-15.

However, it is a closer question whether defendant's alleged use of force during and after the initial seizure was reasonable.  According to plaintiff, she was sitting down and working when defendant arrived.  She started yelling and refused to leave the classroom, but she did not make any threats of violence.  If a reasonable jury believed plaintiff's version of what happened next,

19

defendant pushed plaintiff's back with two hands and punched her in the arm.  Plaintiff then started to hit defendant, but defendant was significantly bigger than plaintiff, and he responded by punching her all over her body.  He shoved her across the hall into a bank of lockers and threw her to the ground.  Plaintiff hit her head and multiple braids were ripped from her scalp. Her head, arm, and body ached after the incident.  Plaintiff's account creates a dispute as to whether defendant's conduct was reasonable under the circumstances and in the educational setting.

These facts are all disputed, of course.  But if a reasonable jury accepted plaintiff's version of events, it could find that the force defendant used  to effect the seizure was excessive under the totality of the circumstances.

Defendant argues that no jury could believe plaintiff's version of events because it is not supported by any other witness and because she gave inconsistent testimony about how many times defendant punched her, where he punched her, and whether he flipped, slammed, pulled, or threw her to the floor.  But the minor inconsistencies in plaintiff's story are not material for purposes of summary judgment.  Plaintiff has always maintained that defendant punched her, shoved her, and forcefully brought her to the ground, and defendant can ask plaintiff about any changes to her story during cross-examination at trial.  In addition, it does not matter at summary judgment that none of the eyewitnesses who provided sworn testimony, except plaintiff, agree with plaintiff's story that defendant punched her first, shoved her hard across the hall, or threw her to the ground. It is also not material that there are no medical records to support plaintiff's allegations of injury and pain.  On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts;

these are jobs for a factfinder.  <u>Johnson v. Advocate Health & Hospitals Corp.</u>, 892 F.3d 887, 893 (7th Cir. 2018). Enough factual disputes exist in this case that I cannot grant summary judgment in favor of defendant.

Therefore, although the undisputed facts show that defendant's initial decision to seize plaintiff and remove her from the classroom was reasonable, plaintiff's allegations of punching, hitting and slamming her to the ground create a genuine issue of material fact as to whether the force used to effectuate the seizure was excessive under the circumstances and in the school setting.

### 3.  <u>Qualified immunity</u>

Defendant contends that even if his actions violated the Fourth Amendment, he is entitled to qualified immunity.  The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Locke v. Haessig</u>, 788 F.3d 662, 666 (7th Cir. 2015).  "Clearly established" means that the existing precedent placed the statutory or constitutional question beyond debate at the time of the alleged violation.  <u>Green v. Newport</u>, 868 F.3d 629, 633 (7th Cir. 2017).  In other words, plaintiffs must show that "every reasonable official would understand" that his actions violated a given right.  <u>Id.</u>

It is well established that a school administrator or teacher cannot use excessive force against a student.  <u>Doe v. Heck</u>, 327 F.3d 492, 523 (7th Cir. 2003) (citing <u>Meyer v. Nebraska</u>, 262 U.S. 39, 399 (1923); <u>Ingram v. Wright</u>, 430 U.S. 651, 661 (1977)).  Moreover, even under

the doctrine of qualified immunity, the court must accept plaintiff's versions of events as true at this point and must draw reasonable inferences in her favor. Under plaintiff's account of the incident, defendant punched her, shoved her into a bank of lockers, pulled out her hair, picked her up and threw her to the ground. Plaintiff's allegations suggest that defendant used force that no reasonable school official would think was justifiable or constitutional in a school setting. Accordingly, defendant is not entitled to qualified immunity.

### D.  State Law Claims

Plaintiff alleges battery as a result of defendant's intentionally touching her and causing her harm, including by pushing her, grabbing her, throwing her, hitting her, and pulling her hair. She also alleges that defendant acted negligently by violating her individualized education program and by violating the standard set forth in the Madison Metropolitan School District's policies regarding restraint and seclusion.

Defendant devotes two sentences in his brief to his argument that plaintiff's battery claim should be dismissed. Defendant argues that plaintiff's evidence is insufficient to show that defendant intentionally used force against plaintiff. Dkt. #24 at 60. This argument is undeveloped and unpersuasive, for the same reasons discussed in the context of plaintiff's excessive force claim above.

Turning to plaintiff's negligence claim, defendant argues that he is entitled to summary judgment because Wisconsin's discretionary immunity statute, Wis. Stat. § 893.80(4), bars suit against government subdivisions and public employees "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." I agree with defendant that

the actions he took during the incident at issue were discretionary acts for which immunity is afforded under Wis. Stat. § 893.80(4).  See, e.g., Sheridan v. City of Janesville, 164 Wis. 2d 420, 427-28, 474 N.W.2d 799, 802 (Ct. App. 1991) (decisions regarding use of force during seizures are decisions involving the exercise of governmental discretion).

Plaintiff argues that the exceptions for "ministerial duties" and for "malicious, willful and intentional" conduct permits her negligence claims to go forward.  Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶ 26, 235 Wis. 2d 409, 425, 611 N.W.2d 693, 700 (recognizing four exceptions to government immunity statute).  Plaintiff's argument that defendant's conduct qualifies as a "ministerial" act for which no discretion applies is not persuasive.  In contrast with an immune discretionary act, a ministerial act involves a duty that "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." Id., 2000 WI 56, ¶ 27.  A school official deciding how to handle a classroom situation such as the one defendant faced in this case necessarily requires the exercise of governmental discretion.

However, I agree with plaintiff that the exception for "malicious, willful and intentional" conduct applies, while acknowledging that there is some question in the case law whether the exception applies to negligence claims, for which intent is not an element. At least one court has concluded that the exception does not apply to negligence claims, even if the plaintiff has alleged malicious and intentional conduct.  Wilson v. City of Milwaukee, 138 F. Supp. 2d 1126, 1133 (E.D. Wis. 2001).  However, other courts have concluded in

more recent cases that this immunity exception can apply to negligence claims if there is evidence that the conduct was malicious, willful, and intentional. <u>Geboy v. Oneida County</u>, No. 19-CV-574-BBC, 2020 WL 7398660, at *10 (W.D. Wis. Dec. 17, 2020); <u>Estate of Fiebrink by Cade v. Armor Correctional Health Services, Inc.</u>, No. 18-cv-832-jps, 2019 WL 1980625, at *13 (E.D. Wis. May 3, 2019); <u>Campbell v. Brown County</u>, 2006 WL 1207833, at *5 (E.D. Wis. May 2, 2006); <u>Brown v. City of Milwaukee</u>, 288 F. Supp. 2d 962, 984 (E.D. Wis. 2003). I find these cases more persuasive because I agree that immunity attaches to particular conduct and is not dependent on the legal theory on which a plaintiff relies. See <u>C.L. v. Olson</u>, 143 Wis. 2d 701, 716, 422 N.W.2d 614, 619 (1988) ("[I]t is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability.").

A reasonable jury could find from plaintiff's version of events that defendant's use of force against plaintiff was not only negligent, but malicious, willful and intentional. Therefore, defendant is not entitled to summary judgment on the ground that discretionary immunity bars plaintiff's negligence claim against him. However, to succeed on her negligence claim against defendant at trial, plaintiff must show that the discretionary immunity exception for "malicious, willful and intentional" conduct applies.

E. <u>Punitive Damages</u>

Finally, defendant argues that plaintiff's federal punitive damages claim should be

24

dismissed because she cannot show that defendant acted with malice, evil intent or callous disregard to plaintiff's rights. However, if a jury believed that defendant intentionally punched plaintiff before being physically provoked and then slammed her on the ground, a jury could find that defendant acted with malice or reckless disregard for plaintiff's rights. Therefore, I will not dismiss plaintiff's punitive damages claim at this time. Defendant can raise this argument again after the presentation of the evidence at trial. (Plaintiff acknowledges that she cannot recover more than $50,000 from defendant under state law and cannot recover punitive damages from defendant under state law. Wis. Stat. § 893.50(3).)

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Robert Mueller-Owens, Madison Metropolitan School District and Liberty Mutual Insurance Company, dkt. #21, is DENIED.

2. Defendants' motion to supplement, dkt. #32, is DENIED.

Entered this 2d day of February, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge